UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 16-10049 |
| RICHARD L. SILLS, | ) ) ) |
| Defendant. | ) |

## ORDER AND OPINION

This matter is now before the Court on Defendant's Motion for Compassionate Release requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). (D. 58). For the reasons stated below, his Motion is DENIED.

### BACKGROUND

On October 18, 2016, a grand jury indicted Defendant of three counts of receipt of child pornography and one count of possession of child pornography. (D. 10). On January 27, 2017, Defendant entered a blind plea to the indictment. (d/e 1/27/16). On June 13, 2017, this Court sentenced Defendant to 240 months imprisonment on each count to run concurrently with each other, followed by ten years of supervised release. (D. 28).

Defendant is currently incarcerated at Federal Correctional Institution (FCI) Elkton in Lisbon, Ohio, and is scheduled to be released on October 20, 2033, accounting for projected good time credit. (D. 68 at 8; D. 68-1).

On July 20, 2020, Defendant filed a *pro se* Motion for Compassionate Release. (D. 58). The Court appointed the Federal Public Defender (FPD) to represent him. On July 21, 2020, the FPD filed a motion to withdraw due to a conflict. (D. 59). On July 22, 2020, the Court granted the

motion and appointed attorney Joel Brown to represent Defendant. On December 9, 2020, counsel filed a Supplement to Motion for Compassionate Release on Behalf of Defendant Richard L. Sills. (D. 67). On December 23, 2020, the Government filed a response. (D. 68). This Order follows.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission, however, has not updated its policy statements since the First Step Act came into effect. Prior to the passage of the First Step Act, federal judges were only able to release prisoners for compassionate release reasons upon motion by the BOP. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The First Step Act gave judges the power to grant compassionate release on a prisoner's own motion provided that the prisoner first allowed the BOP to review the request and make a recommendation or thirty days had passed since the prisoner submitted his or her request to the BOP. *Id*. The Seventh Circuit determined that the most recent policy statements from the Sentencing Commission do not apply to prisoner-initiated motions because the guidelines only address those motions that were brought pursuant to a BOP

motion. *Id*. at 1180. Accordingly, the Seventh Circuit held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. "Any decision is 'consistent with' a nonexistent policy statement." *Id*. This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Id*. at 1181.

Despite the Seventh Circuit clarifying that courts are not bound by the Sentencing Commission's guidelines regarding compassionate release when an inmate brings the motion, the Seventh Circuit strongly suggested that those guidelines are still relevant to district courts' decisions. The Seventh Circuit explained that the guidelines provide a "working definition of 'extraordinary and compelling reasons'" and cautioned that a judge who "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*. at 1180. "In this way the Commission's analysis can guide discretion without being conclusive." *Id*. The Seventh Circuit further stated that it would "expect" district judges to give the BOP Director's analysis regarding the prisoner's request "substantial weight, even though under the First Step Act the Director's views are not controlling." *Id*. Based on the available guidance from the Seventh Circuit, this Court will give great weight to the Sentencing Guidelines regarding motions for compassionate release even though they are not binding in this case.

If an inmate has a chronic medical condition that has been identified by the Centers for Disease Control and Prevention (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(A)(ii)(I). A chronic condition (i.e., one "from which [the defendant] is not expected to recover" reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment

3

of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. *Id*.

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, 2020 WL 2395982, at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Finally, this Court is disinclined to grant a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." *See* USSG § 1B1.13(2).

## DISCUSSION

### I.  Exhaustion of Administrative Remedies

Defendant submitted a request for compassionate release to the Warden at FCI Elkton. On July 10, 2020, the Warden denied his request. (D. 68-5). Therefore, Defendant exhausted his administrative remedies before filing a Motion for Compassionate Release. *See* 18 U.S.C. § 3582(c)(1)(A).

### II. Eligibility for Compassionate Release

#### A. FCI Elkton

As of January 6, 2021, three inmates and twenty-two staff members at FCI Elkton are positive for COVID-19, and 877 inmates and fifty-five staff members who contracted COVID-19 have recovered. There have been nine inmate deaths and no staff deaths from COVID-19. *COVID-*

*19 Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Jan. 6, 2021). Defendant states that the COVID-19 pandemic is particularly dangerous at FCI Elkton where hundreds of inmates have tested positive. (D. 67 at 4). According to the Government, the "BOP has taken and continues to take significant measures to protect the health of the inmates in its charge as a result of the COVID-19 pandemic." (D. 68 at 13-15). The Court recognizes that an outbreak could still occur despite these safety measures, but the mere existence of the COVID-19 pandemic alone does not provide a basis for a sentence reduction. If it did, every inmate would be released. *See Melgarejo*, 2020 WL 2395982, at *5.

### A. Defendant's Medical Conditions

Defendant is sixty-five years old and suffers from gastroesophageal reflux disease (GERD), an "old myocardial infarction," type 2 diabetes, hypertension, and chronic obstructive pulmonary disease. (D. 67 at 3; D. 70-1 at 2, 24). In August 2017, a stent was placed in his coronary artery. (D. 70-1 at 24). Defendant's other health concerns include arthritis, joint pain, and lower back pain. *Id*. In August 2019, his medical records stated that his blood sugars were uncontrolled and that he had been eating poorly from commissary. (D. 70 at 10). He takes numerous medications for his ailments. (D. 70-1).

On May 24, 2020, Defendant tested positive for COVID-19. (D. 62). He was asymptomatic and fully recovered. (D. 70-1 at 7). Defendant fears contracting the virus again, especially due to his age, medical conditions, and the prison environment, which is not conducive for social distancing. (D. 58 at 4; D. 67 at 2).

The Government acknowledges Defendant's medical conditions place him at a higher risk of suffering a severe reaction to COVID-19. (D. 68 at 16). *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION

5

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 6, 2021). The Government notes that the BOP's medical staff is monitoring his diabetes, COPD, and hypertension and advised him that his poor diet and lifestyle choices negatively affect his diabetes. (D. 68 at 16-17). The Government argues that Defendant's Motion should be denied because he failed to present any evidence that he faces a compelling need for release based on a mere chance of contracting COVID-19 a second time. *Id*. at 17.

The Court finds that Defendant has established extraordinary and compelling reasons for a reduced sentence based on his chronic health conditions, which increase the risk for severe illness from the virus. That being said, the Court may also consider whether a reduction is warranted under the factors listed in 18 U.S.C. § 3553(a).

### B. Consideration of the § 3553(a) Factors

Defendant argues his sentence should be reduced to time served because the time he has already served is sufficient to satisfy the purposes of sentencing. (D. 67 at 5). Defendant has engaged in learning opportunities, including walking, crocheting, history of theology, yoga, and AIDS awareness. (D. 66 at 2). He has not completed sex offender treatment, but he argues this could easily be remedied as a release condition. (D. 67 at 5). He has had no disciplinary issues while incarcerated. *Id*. Defendant acknowledges that his offense qualified him for a serious sentence, but he asserts that his medical conditions and good behavior show that additional incarceration is unnecessary. *Id*.

The Government argues Defendant's Motion should be denied because he continues to be a danger to the community and his release is unsupported by the § 3553(a) factors. (D. 68 at 18). Even though his health conditions place him at a higher risk, the Government asserts that this concern is substantially outweighed by the danger to others in the community and in light of the §

3553 factors. *Id*. Defendant was convicted of four counts of possession and receipt of child pornography. In total, he was responsible for 1322 images and 73 video files of child pornography. (D. 19 at 8, ¶ 32). He received many upward adjustments under the guidelines for possessing material depicting children two years old and younger being sexually abused; using a peer-to-peer file sharing program that allowed others to download his images; possessing images that included minors being bound, handcuffed, and the anal penetration and sexual abuse of an infant or toddler; having two prior hands-on sex offenses of minor children; using a computer; and a high image count. *Id*. at 7-8, ¶ 26-32.

      The Court finds Defendant's criminal offenses to be extremely serious and troubling. Notably, his conduct was not limited to the receipt and possession of child pornography; he also used software that actively shared this material with others. Additionally, when law enforcement confiscated his computer, he stated that he would probably purchase another computer and download files containing child pornography again to fulfill his desire to be with children. (D. 66 at 2). These statements further demonstrate that Defendant may be a danger to the community if his sentence is reduced to time served. It is also alarming that Defendant was convicted of criminal sexual assault (1988) and aggravated criminal sexual assault (1997) for the sexual abuse of his minor children who were under the age of thirteen at the time of the abuse. (D. 19 at 9, ¶ 42-43).

      Despite his good behavior in prison, the Court is unconvinced that Defendant will not be a danger to the community if released, especially because he has not enrolled in the Sex Offender Treatment Program at FCI Elkton. According to the memorandum filed by the U.S. Probation Office, Defendant has not requested to participate in the treatment program. (D. 66 at 2). In other words, he would be entering the community without mitigating his risk to reoffend.

The Court also finds that Defendant's release plan is unsuitable. He plans to reside with his sister if he is released. (D. 66 at 1). When the U.S. Probation Office contacted his sister, she advised that she was unable to answer the phone because she was babysitting her friend's children. *Id*. When she was asked later how often she babysits, she stated, "oh I don't do that anymore, I'm too old." *Id*. at 2. She has eight grandchildren and six minor great grandchildren, but no minors reside in the home. *Id*. The likelihood that minor children will be in the home and around Defendant is high.

Defendant has only served approximately fifty months of his 240-month sentence. (D. 67 at 6). As such, waiving the remainder of Defendant's sentence would not promote respect for the law, reflect the seriousness of the offense, or provide adequate deterrence. As such, a sentence reduction is not warranted under the § 3553 factors, and his Motion is DENIED.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Compassionate Release [58] is DENIED.

ENTERED this 7th day of January, 2021.

s/ Michael M. Mihm  
Michael M. Mihm  
United States District Judge